BEVERLY HEALTHCARE–
MURRYSVILLE,
Petitioner,

v.

DEPARTMENT OF PUBLIC
WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted Jan. 24, 2003.

Decided July 15, 2003.

---

Christopher S. Lucas, Harrisburg, for petitioner.

Amy Jardine Wilson, Pittsburgh, for respondent.

Before SMITH–RIBNER, J., LEAVITT, J., and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Beverly Healthcare–Murrysville (Beverly), an operator of a nursing home facility, appeals from a final order of the Department of Public Welfare, Bureau of Hearings and Appeals (Bureau) that dismissed Beverly's appeal from the decision of the Westmoreland County Assistance Office (CAO) denying the application for medical assistance filed by Beverly on behalf of its patient. The issues on appeal are: (1) whether Beverly had standing to appeal the CAO's denial of nursing home care benefits to its former patient; (2) whether the Bureau improperly raised the standing issue *sua sponte*; and (3) whether the hearing examiner violated Beverly's right to due process by engaging in *ex parte* communication with the Bureau's employees in denying Beverly's request to continue a scheduled hearing. We affirm.

The relevant facts found by the hearing examiner and revealed in the record are as follows. Joseph Yusko was a patient at Beverly's nursing home facility since March 21, 2001. On August 24, 2001, Beverly's employee, Cynthia Bankosh, filed an application for nursing home care benefits on behalf of Yusko. Yusko's only daughter, Lynn Thielet, was listed in the applica-

tion as his "representative."[1] Yusko was thereafter discharged from Beverly's nursing home facility on September 14, 2001. On October 5, 2001, the CAO notified Beverly, Yusko and Thielet of its decision to deny the application due to Yusko's failure to keep appointments to provide information necessary to determine his eligibility for benefits.[2] On October 15, 2001, Beverly, through Cynthia Bankosh, appealed the CAO's decision and requested a hearing noting, "family representative not cooperating with CAO, utilizing resident's fund." In the appeal cover sheet forwarded to the Bureau, the CAO indicated that Bankosh did not have a power of attorney to represent Yusko.

Subsequently, a hearing scheduled for November 19, 2001 was continued to January 7, 2002 upon request of Beverly's counsel. Beverly's counsel thereafter subpoenaed Yusko's daughter, Thielet, directing her to appear at a hearing scheduled for January 7, 2002 with banking and personal finance records related to the administration of Yusko's estate. Although Thielet was unable to appear at the January 7, 2002 hearing due to the bad weather and school cancellation, she was available for a hearing via telephone and participated in a telephone conference.

During the conference, the hearing examiner questioned Beverly's authority to represent Yusko on appeal. In response,

Beverly's counsel stated that Yusko died sometime in October 2001 after he was discharged from Beverly's nursing home and that he intended to obtain "retroactive" authority to appeal the CAO's decision from Thielet. Beverly's counsel then requested continuance of the January 7, 2002 hearing to have Thielet appear in person at a hearing. The hearing examiner granted the request and continued the hearing to April 1, 2002.

On January 9, 2002, the hearing examiner issued a rule upon Beverly to show cause why Beverly's appeal should not be dismissed, unless Beverly could submit evidence of its authority to represent Yusko on appeal, such as a guardianship or a power of attorney. Beverly's counsel filed an answer, stating that Thielet would "ratify" the CAO's decision. On March 5, 2002, Beverly's counsel filed an application to enforce the subpoena previously issued on Thielet on December 28, 2001. The Bureau then issued an order stating that the Bureau had no objection to the subpoena. Subsequently, Beverly's counsel submitted a copy of a petition to enforce the subpoena in which the Bureau was named as a petitioner and Thielet as a respondent, proposing to file it with this Court. Beverly's counsel also requested continuance of the hearing scheduled for April 1, 2002. In an order dated March 25, 2002, the Bureau rejected the proposal of Beverly's

1. Section 446(1) of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. § 446(1), permits "a relative, friend or official of the agency providing medical or other care" to file an application on behalf of a person in need of medical assistance when that person is unable to do so due to his or her illness, infirmity or minority. The regulations at 55 Pa.Code § 125.84(a)(5) provides that "[i]f because of illness, infirmity or a physical or mental handicap a person is unable to apply for himself, ... official of the institution or agency providing the service may apply on behalf of the applicant." However, "[i]f the applicant has a guardian or other legal representative, that person shall be expected to apply on behalf of the applicant if he is available to do so." 55 Pa.Code § 124.84(a)(6).

2. Section 431 of the Public Welfare Code, 62 P.S. § 431, requires every person applying for public assistance "to sign a statement setting forth his financial status and such other facts as may be required by the department, in order to determine whether such applicant is entitled to public assistance."

counsel and denied the request for continuance. The Beverly's counsel did not appear at the April 1, 2002 hearing, but participated in the hearing via telephone.

The hearing examiner found that Beverly was only a creditor having a claim against Yusko's estate for the unpaid fees charged for the services rendered to Yusko and did not have any legal authority to represent the interest of Yusko or his estate on appeal and that Thielet was not an executrix of Yusko's estate. Concluding that Beverly lacked standing to appeal the CAO's decision, the hearing examiner recommended dismissal of Beverly's appeal. The Bureau adopted the hearing examiner's recommendation and dismissed the appeal. Beverly's appeal to this Court followed.[3]

Beverly contends that the Bureau erred in concluding that it lacked standing to appeal the CAO's decision. Beverly further contends that the Bureau improperly raised the standing issue *sua sponte*.

■■■ The concept of standing concerns the question of who is entitled to make a legal challenge to the matter involved. *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of the City of Philadelphia*, 729 A.2d 117 (Pa.Cmwlth.1999). Standing may be conferred by a statute or by an interest of a party deserving legal protection. *Pennsylvania National Mutual Casualty Ins. Co. v. Department of Labor & Industry, Prevailing Wage Appeals Board*, 552 Pa. 385, 715 A.2d 1068 (1998). Where the statute and the regulations designate who may appeal, only those persons so designated have standing to appeal. *In re 1995 Audit of Middle Smithfield Township Board of Auditors*, 701 A.2d 793 (Pa. Cmwlth.1997), *appeal denied*, 556 Pa. 681, 727 A.2d 134 (1998).

Section 423(a) of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. § 423(a), provides that "[a]ny person applying for or receiving assistance of any type covered by the public assistance provisions of the federal Social Security Act, may appeal to the department from any decision of the county board, refusing or discontinuing his assistance, in whole or in part." The regulations at 55 Pa.Code § 275.2 defines the term "appellant" as "[t]he applicant or recipient who has requested the hearing and signed the appeal"; and the term "hearing request" as "[a]n expression, oral or written, by the client or *the person acting for him, such as his legal representative, relative or friend*, to the effect that he wants an opportunity to present his case to higher authority." *Id.* (Emphasis added.)[4]

---

**3.** This Court's review of the Bureau's adjudication is limited to determining whether the adjudication violated constitutional rights or was not in accordance with the law, or whether the findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *H.D. v. Pennsylvania Department of Public Welfare*, 751 A.2d 1216 (Pa.Cmwlth.2000).

**4.** To support its contention that it had a right to appeal the CAO's decision, Beverly relies on Article 5, Section 9 of the Pennsylvania Constitution, Pa. Const. art. 5, § 9, which provides:

There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be provided by law; and there shall be such other rights of appeal as may be provided by law.

It is well established, however, that Article 5, Section 9 is not self-executing and requires legislative implementation. *LaCamera v. Board of Probation & Parole*, 13 Pa.Cmwlth. 85, 317 A.2d 925 (1974). In this matter, therefore, the relevant provisions of the Public Welfare Code and the regulations promul-

■ Generally, the question of standing is not an issue of subject matter jurisdiction and therefore may not be raised *sua sponte*. *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998). However, where, as here, a statute creates a cause of action and designates who may bring an action or appeal a decision, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite to an action or an appeal. *Grom v. Burgoon*, 448 Pa.Super. 616, 672 A.2d 823 (1996); *Hill v. Divecchio*, 425 Pa.Super. 355, 625 A.2d 642 (1993). Hence, the Bureau properly raised the issue of Beverly's standing *sua sponte*.

■ The Bureau concluded that Beverly did not have standing to appeal because it was not Yusko's legal representative, relative or friend under 55 Pa.Code § 275.2.[5] Beverly admits that it was not Yusko's guardian or relative and did not have a power of attorney or other legal authority to represent Yusko. Further, nothing in the record supports Beverly's argument that it should be considered Yusko's "friend," i.e., "one attached to another by affection or esteem." Merriam–Webster's Collegiate Dictionary 466 (10th ed.2001). When Beverly appealed the CAO's decision to the Bureau, Yusko was no longer Beverly's patient. The mere fact that Beverly assisted Yusko in filing the application for medical assistance alone does not establish a friendship between Yusko and Beverly. Moreover, all actions surviving a decedent must be brought by and against a personal representative duly appointed by the register of wills. *Finn v. Dugan*, 260 Pa.Super. 367, 394 A.2d 595 (1978). Beverly stated that it could obtain "retroactive" authority from Yusko's daughter. Beverly acknowledges, however, that she was not an executrix of Yusko's estate.[6] Thus, the record does not support a finding that Beverly represented the interests of Yusko or his estate for the purpose of establishing its standing to appeal.

■ Further, Beverly lacks standing even under the traditional standing standard that one must be an aggrieved party to have standing. *Beers v. Unemployment Compensation Board of Review*, 534 Pa. 605, 633 A.2d 1158 (1993).[7] To be considered aggrieved, the party must have a direct, immediate and substantial interest in the outcome of the appeal. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). An interest is "direct" for the purpose of standing when a person claiming to be aggrieved may suffer harm to his or her interest from the outcome of the appeal. *Upper Bucks County Vocational–Technical School Education Ass'n v. Upper Bucks County Vocational–Technical School Joint Committee*, 504 Pa. 418, 474 A.2d 1120 (1984). An interest is "immedi-

gated thereunder govern Beverly's right to appeal.

5. It must be noted that the Bureau's interpretation of its own regulations is given great deference, unless they are unreasonable or inconsistent with federal regulations. *Presbyterian Medical Center of Oakmont v. Department of Public Welfare*, 792 A.2d 23 (Pa. Cmwlth.2002).

6. Beverly's counsel sought to enforce the subpoena issued in December 2001 to establish that Yusko's daughter abandoned Yusko and mismanaged his assets. However, we do not see how such evidence is relevant in establishing Beverly's standing.

7. *See Press–Enterprise, Inc. v. Benton Area School District*, 146 Pa.Cmwlth. 203, 604 A.2d 1221 (1992) (the traditional standing requirement is applicable, only if a statute or regulations are silent on the question of standing).

ate" when the protection of the type of asserted interest is among the policies underlying the legal rule relied on by the person claiming to be aggrieved. *Id.* A finding that a party has no standing simply means that the asserted interest is not protected by a statute. *Wm. Penn Parking Garage.*

 It is well established that the medical assistance program is intended to benefit recipients, not providers. *St. Christopher's Hospital for Children v. Department of Public Welfare,* 128 Pa. Cmwlth. 144, 562 A.2d 1021 (1989); *Harston Hall Nursing & Convalescent Home, Inc. v. Department of Public Welfare,* 99 Pa.Cmwlth. 475, 513 A.2d 1097 (1986). Therefore, the interest of Beverly, as a creditor against Yusko's estate, in the outcome of the determination of eligibility for medical assistance, is neither direct nor immediate. Beverly's collateral concern for the outcome of the appeal does not satisfy the traditional standing requirement. *Wm. Penn Parking Garage.*

Beverly next contends that the hearing examiner violated its right to due process by engaging in *ex parte* communication with the Bureau's employee in denying its request to continue the April 1, 2002 hearing.

Improper *ex parte* communication occurs when information is exchanged between a judge and a party without notice to an adverse party. *Borough of Kennett Square v. Lal,* 164 Pa.Cmwlth. 654, 643 A.2d 1172 (1994). The hearing examiner's alleged communication occurred, however, with the Bureau's employee, not with the party. Moreover, an administrative agency has an inherent power and discretion to grant or deny continuance. *Hainsey v. Pennsylvania Liquor Control Board,* 529 Pa. 286, 602 A.2d 1300 (1992). The hearing examiner already continued

the November 19, 2001 and January 7, 2002 hearings upon the requests of Beverly's counsel. Beverly thus had ample time to present evidence to establish its standing. Under these circumstances, the hearing examiner did not abuse his discretion in denying the request for continuance of the April 1, 2002 hearing.

Accordingly, the order of the Bureau is affirmed.

### ORDER

AND NOW, this 15th day of July, 2003 the order of the Department of Public Welfare, Bureau of Hearings and Appeals in the above-captioned matter is affirmed.