J-S61030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF:<br>J.Z.A.A. | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| APPEAL OF: S.F.,  NATURAL MOTHER | |
| | No. 413 WDA 2016 |

Appeal from the Order February 19, 2016
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): 17 in Adoption 2015

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF:<br>R.J.R. | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| APPEAL OF: S.F.,  NATURAL MOTHER | |
| | No. 414 WDA 2016 |

Appeal from the Order February 19, 2016
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): 74 in Adoption 2015

BEFORE:  PANELLA, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 09, 2016**

S.F. (Mother) appeals from the trial court's decrees involuntarily terminating her parental rights to her minor children, J.Z.A.A. (born 1/2014) and her half-sister, R.J.R. (born 1/2004).  Due to Mother's continued refusal

to acknowledge the severity of and treat her domestic violence issues with

J.Z.A.A.'s biological father,[1] the court properly terminated her parental

rights. Thus, we affirm.

In a prior change of goal appeal, our Court reiterated the relevant

facts of this case:

> On October 11, 2012, Mother [voluntarily] placed R.[J].R. in the care of J.M., Mother's cousin. On April 29, 2014, J.M. contacted the Erie County Office of Children and Youth [OCY], and asked that R.[J.]R. be removed from her home. R.[J].R. was adjudicated dependent by order entered May 20, 2014. On September 10, 2014, [OCY] placed R.[J.]R. back in the care of Mother.
>
> Less than a week later, on September 16, 2014, Mother took J.[Z.A.]A. to the hospital, where it was determined that J.A. had suffered a spiral fracture to her arm. Mother provided several inconsistent explanations of how this injury took place, none of which was medically acceptable. As a result of these events, *inter alia*, R.[J.]R. and J.[Z.A.]A. were placed in foster care.
>
> On December 18, 2014, [OCY] filed a petition for permanency hearing, in which it recommended terminating the parental rights of Mother involuntarily. A permanency hearing was held on February 6, 2015. Following the hearing, on February 12, 2015, the court entered an order changing J.[Z.A.]A.'s permanency goal to adoption. The court also entered its order ending Mother's services and visitation with respect to R.[J.]R.

***In the Interest of R.R. & J.A.***, Nos. 433 & 434 WDA 2015, at 2 (Pa.

Super. filed 8/31/2015) (unpublished memorandum). Mother filed timely

notices of appeal from the February 12, 2015 orders and, on August 31,

2015, our Court affirmed the orders changing the permanency goal of

_____

[1] Children have different biological fathers.

- 2 -

J.Z.A.A. to adoption and ending services and visitation with respect R.J.R. *Id.*

On September 18, 2015, OCY filed a petition to involuntarily terminate Mother's rights to J.Z.A.A. and R.J.R. After a hearing, the court entered decrees terminating Mother's parental rights to J.Z.A.A. on the basis of sections 2511(a)(1), (a)(2), (a)(5) and (b) of the Adoption Act ("the Act")[2], and to R.J.R. on the basis of sections 2511(a)(1), (a)(2), and (b) of the Act.[3] This timely appeal follows.

On appeal, Mother presents the following issues for our consideration:

(1) Whether the Orphans' Court committed an abuse of discretion and/or error of law when it concluded that the Office of Children and Youth established, by clear and convincing evidence, grounds for termination of parental rights under 23 Pa.C.S.A. Section 2511(a)(1), specifically that appellant evidenced a "settled purpose of relinquishing her parental claim and refused to perform parental duties" in the 6 month period preceding the filing of the petition.

(2) Whether the Orphans' Court committed an abuse of discretion and/or error of law when it concluded that the Office of Children and Youth established, by clear and convincing evidence, grounds for termination of parental rights under 23 Pa.C.S.A. Section 2511(a)(2); specifically that the evidence demonstrated a "repeated and continued incapacity, abuse, neglect or refusal of appellant that caused the child to be without essential parental care" and

---

[2] 23 Pa.C.S. §§ 2101-2910.

[3] If an appellate court determines that a trial court ruling is correct, it can affirm on any basis supported by the record. *In re Adoption of Z.S.H.G.*, 34 A.3d 1283 (Pa. Super. Ct. 2011).

that the conditions cannot or will not be remedied by appellant.

(3)    Whether the Orphans' Court committed an abuse of discretion and/or error of law when it concluded that the Office of Children and Youth established, by clear and convincing evidence, grounds for termination of parental rights under 23 Pa.C.S.A. Section 2511(a)(5).

(4)    Whether the Orphans' Court committed an abuse of discretion and/or error of law when it concluded that the Office of Children and Youth established, by clear and convincing evidence, grounds for termination of parental rights under 23 Pa.C.S.A. Section 2511(b), when the evidence established a significant bond.

(5)    Whether the Orphans' Court committed an abuse of discretion and/or error of law when it admitted into evidence, over objection, the dependency court summaries used during the juvenile court proceedings when said summaries contained hearsay.

(6)    Whether the Orphans' Court committed an abuse of discretion and/or error of law by failing to sequester Office of Children and Youth witnesses despite a request to do so by appellant.

Appellant's Brief, 4/15/16, at 6.

In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."  It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation

omitted).  *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party

- 4 -

seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).

In her first issue, Mother claims that the court improperly terminated her parental rights to Children under section 2511(a)(1) where the court-imposed change of goal prevented her from visiting with Children, causing them to be estranged through no fault of her own.

Pursuant to section 2511(a)(1):

(a) General rule. — The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition **either** has evidenced a settled purpose of relinquishing parental claim to a child **or** has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1) (emphasis added).

We first note that parental conduct language of section 2511(a)(1) is disjunctive, not conjunctive. Therefore, termination is proper if *either one* of the conditions in the statute is proven by clear and convincing evidence. ***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) Here, the reason that the goal for J.Z.A.A. was changed to adoption, which led to visits being stopped, was a result of Mother and J.Z.A.A.'s biological father's inability to resolve their domestic violence issues to the extent that they could safely parent R.J.R. and J.Z.A.A. ***In the Interest of R.R. & J.A.***, Nos. 433 & 434 WDA

2015, at 4 (Pa. Super. filed 8/31/2015) (unpublished memorandum), citing Juvenile Court Opinion, 3/31/2015, at 12, 17. In addition, while Mother had attended visits, doctor's appointments, urine screens,[4] and parenting classes to fulfill family service plan goals, she had been slow to address her mental health needs. *Id.* at 7. Most notable, however, is the fact that Mother consistently failed to attend domestic violence intervention programs which demonstrated her continued lack of commitment toward remedying her on-going history of domestic violence.[5] *Id.* All of these factors support a finding under section 2511(a)(1) that Mother has failed to perform her parental duties for at least six months prior to the filing of the termination petition. The court's order of cessation of visits and services had nothing to do with its ultimate determination to terminate Mother's rights under section 2511(a)(1). Rather, the court's decision was based on the fact that because Mother chose to avoid attending domestic violence programs and mental health treatment, she was not able to perform any parental duties for the year that Children remained in foster care prior to the filing of the

_____

[4] Mother is being treated for her opiate addiction.

[5] In fact, Mother had to start the domestic violence program over two times due to the fact that she violated program policies. N.T. Termination Hearing, 2/19/16, at 16. Even though Mother completed the program the day before the termination hearing, we recognize that under section 2511(b) of the Act, a court shall not consider any efforts by a parent to remedy the conditions described in a termination petition which are initiated subsequent to receiving notice of the filing of the petition. 23 Pa.C.S. § 2511(b).

termination petition. *In re T.D.*, 949 A.2d 910 (Pa. Super. 2008). Accordingly, this claim is meritless.[6]

In her next claim, Mother argues that the court erred in terminating her rights to Children under section 2511(b) when the evidence demonstrated that she had a significant parent-child bond. Specifically, Mother claims that the facts of the case "clearly establish that there was a unique bond between Mother and R.J.R." Appellant's Brief, at 11.

While a caseworker testified that Mother had a strong bond with R.J.R., she indicated she did not know that it was a healthy bond since it "produced a lot of anxiety for [the child]." N.T. Termination Hearing, 2/19/16, at 73, 75. In fact, an OCY caseworker testified that Mother's bond with R.J.R. was an "unhealthy situation," *id.* at 136, 151, where Mother would spend her visits with R.J.R. disciplining her rather than using the time to build a positive relationship with her child and develop emotional stability and growth between them. *Id.* at 137. The caseworker further testified that such growth is especially critical for a child, like R.J.R., who suffers from reactive attachment disorder, post-traumatic stress disorder (PTSD), and attention-deficit/hyperactivity disorder (ADHD).

_____

[6] In her next two issues, Mother contends that the court erred in terminating her rights under section 2511(a)(2) and (a)(5). Having concluded that the court properly terminated Mother's rights to Children under section 2511(a)(1), we need not address the remaining subsections of 2511(a) on appeal. *In re Adoption of Z.S.H.G.*, *supra*.

When asked whether termination would be in the best interests of the Children, the OCY caseworker opined that termination would be in R.J.R.'s best interests due to the child's need for a stable, consistent environment that would provide attention to "medication, therapy [and] intensive services, probably far into the future, . . . [as Mother] is [not] capable of managing that for her." *Id.* at 142. The caseworker also testified that termination would not have a negative effect on any existing bond between Mother and R.J.R. *Id.* at 143. With regard to J.Z.A.A., the caseworker testified that termination is in her best interests since Mother has shown to be a direct threat to Child's safety as evidenced by Mother's inability to explain J.Z.A.A.'s spiral fracture. Moreover, as J.Z.A.A. was removed from Mother's care when she was only eight months old and has remained in foster care since her placement, it can be inferred that she is not bonded with Mother. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (in cases where there is no evidence of bond between a parent and child, it is reasonable to infer that no bond exists; extent of bond-effect analysis necessarily depends on circumstances of particular case).

Under the circumstances, the trial court's decision to terminate Mother's parental rights to Children under section 2511(b) is supported by the record. *See In re T.S.M.*, 71 A.3d 251 (Pa. 2013) (mere existence of bond or attachment of child to parent will not necessarily result in denial of termination; child's attachment to parent, despite serious parental neglect

and failure to correct parenting and behavior disorders harming child, cannot be misconstrued as bonding).

Mother next contends that the trial court improperly admitted dispositional court summaries (used during prior dependency proceedings) at the termination hearing and that those summaries contained hearsay evidence. However, Mother fails to identify exactly what portions of the designated statements constitute hearsay. Rather, she makes the sweeping claim that such statements "should not be admitted 'en masse' in a proceeding involving termination of parental rights." Appellant's Brief, at 12. We remind Mother that it is not our job as an appellate court to flesh out her legal arguments.

Moreover, it is within the sound discretion of the trial court to determine whether to admit or exclude evidence, and we may reverse only upon a showing of an abuse of discretion or error of law. *Winshel v. Jain*, 925 A.2d 782 (Pa. Super. 2007). Instantly, OCY's attorney acknowledged at the termination hearing that Mother had stipulated to the dependency petition, as set forth in the Master's recommendation. Finally, the court took judicial notice of the document as a court record. *See* Pa.R.E. 201(b) (court may judicially notice fact that is not subject to reasonable dispute because it: (1) is generally known within trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned). We find no error.

Finally, Mother contends that the trial court erred when it failed to sequester OCY witnesses, who were not the immediate caseworker, where OCY witnesses' testimony could "piggyback" on each other's testimony.

Our Court's standard of review for a trial court's decision on sequestration of witnesses is abuse of discretion. *Commonwealth v. Stevenson*, 894 A.2d 759 (Pa. Super. 2006). The court will not reverse a trial judge's decision to grant or deny sequestration absent a clear abuse of discretion. *Id.* Moreover, an appellant must demonstrate that he or she was actually prejudiced by a trial judge's sequestration order before any relief may be warranted. *Id.* A request for sequestration must be specific and supported by a showing that the interests of justice require it. *Id.*

Pursuant to Pa.R.E. 615, a court is not authorized to sequester:

(a) a party who is a natural person;

(b) an officer or employee of a party that is not a natural person (including the Commonwealth) after being designated as the party's representative by its attorney;

(c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or

(d) a person authorized by statute or rule to be present [which includes the guardian of a minor].

Pa.R.E. 615. Instantly, the trial court did not sequester the OCY witnesses because they were agency employees, and, thus, prohibited from being sequestered under Rule 615(b). Moreover, each OCY witness's testimony was given in chronological order of their involvement in the matter. Because no "piggybacking" occurred, Mother is not able to show that she was actually

- 10 -

prejudiced by the court's decision. ***Stevenson***, ***supra***. Thus, no relief is warranted.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2016